## Deysher *versus* Triebel.

1. In many cases where one has received goods wrongfully, a contract of purchase will be inferred, and the owner may waive the tort and recover for goods sold and delivered.

2. If there be no fraud, a recovery cannot be had under a count for goods sold and delivered, for the specific articles in the possession of a defendant.

3. Where a person tortiously in possession of another's goods converts them into money or securities, assumpsit for money had and received may be maintained.

4. The count for money had and received is governed by equitable principles, and lies only where the defendant *ex æquo et bono* ought to refund the money received.

5. Where there has been no deceit or unfair practice and the defendant may with good conscience retain the money, he cannot, on a count for money had and received, be compelled to repay, although he could not have recovered it originally.

6. T. sent shingles to J., which were delivered to D. In an action by T. against D. for goods sold and delivered, D. might show that he received the shingles by mistake, supposing they had been sent to him by K., with whom he had been dealing, and that he had settled with K. and paid him without knowledge of the mistake.

[Deysher *v.* Triebel.]

March 7th 1870.   Before Thompson, C. J., Agnew and Sharswood, JJ.   Read, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county:* No. 97, to January Term 1870.

On the 18th of November 1868, E. G. Triebel brought an action of assumpsit against Jacob S. Deysher.

The plaintiff's statement was for goods sold and delivered, to wit: "26,475 shingles (consigned to said defendant from Jersey Shore, Pa., on the 7th of July and received by him at Reading on the 13th of said month 1868) at the sum of $12.50 per M., amounting to $330.94, at 60 days after date."

The plaintiff testified that in the summer of 1868 he sold shingles, worth $12.50 a thousand, to Joshua Keely, a lumber merchant in Reading, and shipped them from Jersey Shore. Plaintiff called on the defendant and told him that he had ascertained that defendant had received a car of shingles shipped to Keely, and told him the number of the car in which they were shipped; the defendant denied having received such car; plaintiff called again and told defendant that he (plaintiff) had ascertained at the freight office that defendant had got the car and had paid the freight on it. Defendant said, "I paid for those shingles to Karstetter, and I am not going to pay for them again." The plaintiff gave evidence that the shingles were shipped in a car at Jersey Shore and consigned to Keely, that they were transferred from that car to another (No. 2503) at Harrisburg, and consigned to the defendant at Reading on the 10th of July; and that the shingles came to the defendant's yard.

The defendant offered to prove that he had a contract with Thomas Karstetter & Co. for all the shingles he should need for 1868, that he received three car-loads of shingles, one being No. 2503, which was marked for the defendant as the others; it was entered on his books to the credit of Karstetter; he settled all his accounts with Karstetter, in which this car-load of shingles was included, and the balance appearing to be due to Karstetter had been paid on the 19th of September 1868; that defendant had no notice until October 1868, that any one but Karstetter claimed to own these shingles; that three car-loads of shingles had been shipped to him by Karstetter, one of which, shipped in July 1868, never reached him.

The offer was objected to by the plaintiff as irrelevant, rejected by the court (Van Reed, J.), and a bill of exceptions sealed.

The verdict was for the plaintiff for $351.22.

The rejection of this offer was assigned for error by the plaintiff on the removal of the record to the Supreme Court.

*S. L. Young,* for plaintiff in error.—A party who receives money paid under a mistake, cannot be compelled to refund it,

[Deysher *v.* Triebel.]

although it be money which he could not recover at law, if he does not exercise any fraud or deceit in obtaining it, and if he may receive it with a good conscience: Bogart *v.* Nevins, 6 S. & R. 369; Espy *v.* Allison, 9 Watts 462; Mann's Appeal, 1 Barr 24; Hinkle *v.* Eichelberger, 2 Id. 483; Carson *v.* McFarland, 2 Rawle 118; Mayer *v.* Foulkrod, 4 W. C. C. R. 503; Herring *v.* Adams, 5 W. & S. 459; Boas *v.* Updegrove, 5 Barr 516; Spiese *v.* McCoy, 6W. & S. 485.

*A. G. Green*, for defendant in error, cited Pearsol *v.* Chapin, 8 Wright 9; Ege *v.* Koontz, 3 Barr 109; Thomas *v.* Brady, 10 Id. 164.

The opinion of the court was delivered, March 21st 1870, by

SHARSWOOD, J.—This was an action of assumpsit, in which the plaintiff filed a statement for goods sold and delivered, to wit: "26,475 shingles (consigned to said defendant from Jersey Shore, Penna., on the 7th of July, and received by him at Reading on the 13th of said month, 1868), at the sum of $12.50 per M., amounting to $330.94 at 60 days after date." The plea was non assumpsit. The only assignment of error is, that the court erred in the rejection of the offer of evidence by the defendant as set forth in the bill of exceptions.

There was evidence that a car-load of shingles had been shipped by Triebel not to Deysher but to Keely, to whom he was under a contract to furnish such goods. By some mistake, whose does not appear, the car was marked in chalk with the name of Deysher, and the shingles were received by him. There was certainly no express contract of sale shown or even pretended between Triebel and Deysher; yet, under these bare circumstances, without explanation, such a contract might perhaps have been implied. There would be some reason and authority for so holding. If a coal merchant, by the mistake of his driver, empties a ton at my door, and I take it in without inquiry or objection and consume it, knowing that it must have been sent to me by mistake, it may be that a recovery could be had in assumpsit under a count for goods sold and delivered upon an implied promise to pay the market price. "In many cases," says Mr. Leigh, "where the defendant has received goods wrongfully, a contract for the purchase will be inferred, and the plaintiff may waive the tort and recover the amount in an action for goods sold and delivered:" 1 Leigh's Nisi Prius 91; 1 Stephen's Nisi Prius 286. Thus in Biddle *v.* Levy, 1 Starkie 20, where goods were supplied to a minor upon a fraudulent representation by his father that he was about to relinquish his business in favor of his son, although the credit was given to the son, yet as the father dealt with the proceeds, he was held to be responsible in assumpsit for goods sold and delivered.

14 P. F. SMITH—25

[Deysher *v.* Triebel.]

In Hill *v.* Perrott, 3 Taunt. 274, it was decided that recovery could be had on such a count alone for goods which the defendant had by fraud procured the plaintiff to sell to an insolvent, and which he had gotten into his own possession. And in Studdy *v.* Sanders, 5 B. & C. 628, where the vendor of cider-juice to be made on his premises, lent casks to the vendee for the purpose, which were seized through the vendee's fault for a breach of the excise laws, it was held that the vendor might recover the price of the casks as for goods sold. But on the other hand, it is well settled that where there has been no fraud or unfair dealing, or other circumstances from which an implication may arise under such a count, a recovery cannot be had of the value of specific articles in the possession of the defendant claimed by the plaintiff as his property: Willet *v.* Willet, 3 Watts 277; Gray *v.* Griffith, 10 Id. 431. In the case before put of the ton of coal, if in point of fact I had purchased and paid for such a load from a different coal merchant, and innocently received and consumed it under that mistake, I cannot be made to pay for it to a man from whom I had not ordered it, at least not under a count for goods sold and delivered. It is not necessary to inquire how such a case would stand in an action of replevin or trover. Where, indeed, a person tortiously in possession of the goods of another, converts them into money or securities equivalent to money, assumpsit for money had and received may be maintained against him for the amount so received. But it is to be remarked, that the count for money had and received has always been looked upon as governed by equitable principles, and it lies only where the defendant ought *ex æquo et bono*, to refund the money which he has received; for where there has been no deceit or unfair practice, and he may with a good conscience retain it, he cannot in this form of action be compelled to pay it back, even where he could not at law have recovered it originally: Morris *v.* Tarrin, 1 Dall. 148; Bogart *v.* Nevins, 6 S. & R. 369; Irvine *v.* Hanlon, 10 Id. 219; Espy *v.* Allison, 9 Watts 462; Mann's Appeal, 1 Barr 24; Hinkle *v.* Eichelberger, 2 Id. 483.

The application of these principles to the question of the competency and relevancy of the evidence offered by the defendant and rejected, is plain. That offer was in substance to show that he had a contract with Karstetter & Co. to furnish him shingles, and that the car-load shipped by Triebel was received by him innocently, under the mistaken belief that it had been consigned to him by Karstetter & Co., and that without any notice that the shingles were owned or claimed by any other person, he had settled with and paid Karstetter & Co. for them. Had the offer been sustained by corresponding proof, it would have established beyond all question that Triebel could not recover under a count for goods sold and delivered. It would have answered any

[Deysher *v.* Triebel.]

possible pretence that Deysher was under an implied contract to pay Triebel the price of the goods. It is not necessary to say how it would have been if there had been a count for money had and received. No evidence was given that any money had been received for the shingles by Deysher. Nor is it material that no objection was made to the form of the pleadings. It did not devolve on the defendant to make any such point at the time he made the offer. What he was called on to meet was the plaintiff's claim in the statement filed. Had the evidence been received, and the case submitted to the jury on the merits, there would be some reason for holding that it would be too late to raise here any technical objection to the plaintiff's recovery not taken in the court below, inasmuch as the pleadings might have been amended, and Deysher shown to have actually converted the shingles into money, or its equivalent. The rejection of the defendant's offer left him before the jury upon evidence unexplained, from which they might have inferred that he had received the goods with no reason to think that he had any right to them, that he must have known that they had been sent to him by mistake, that he had not paid for them, and that there was raised thereby an implied promise to pay the plaintiff for them at the market price.

Judgment reversed, and *venire facias de novo* awarded.