## Montour Furniture Company *v.* Sakolsky et al., Appellants.

Argued November 10, 1936. Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Mortimer C. Rhone,* for appellants.

*S. D. Furst,* of *McCormick, Herdic & Furst,* for appellee.

OPINION BY STADTFELD, J., January 29, 1937:

The plaintiff is a furniture manufacturer operating a plant in Williamsport, Lycoming County, Pennsylvania,

and the defendants had been acting as selling agents for the plaintiff in the City of New York for a number of years prior to the bringing of suit in this case, and, prior to the 1st day of January, 1932, operated under an oral agreement which provided that the plaintiff should ship furniture, and photographs of its furniture, to the defendant's showroom in New York which property remained the property of the plaintiff until sold by the defendant. The defendants used the furniture for display and sample purposes; selling and delivering either the suite on hand, furnished by the plaintiff as samples, or causing an identical suite to be shipped directly to the purchaser by the plaintiff, designated by the defendant on its order. The defendants made sale of this furniture on a commission basis, under an oral agreement.

The defendants were credited or paid a seven per cent commission on the selling price. If the purchaser defaulted in payment for the goods by reason of insolvency the defendants were under a duty to refund the commission apportionable to the defaulted amount. When furniture was shipped to the defendants the plaintiff sent with it a covering memorandum invoice showing the retail price which represented the minimum amount which the defendants should receive upon sale.

The defendants averred in their affidavit of defense, and proved at the trial, that after January 1, 1932, there was a written agreement between the parties, dated December 24, 1931, which was to govern the transactions between them and the defendants deny that they had any transactions under any oral contract after January 1, 1932. The written agreement did not vary materially from the alleged oral agreement except that it provided for all furniture sold by the defendants for the account of the plaintiff, they were to be paid seven per cent before cash discount on bedroom furniture shipped in the metropolitan territory, excepting where their rates of commission were mutually agreed

upon. It also provided that commission paid on bad accounts should be deducted as under the oral contract. The agreement was to continue in force for the year 1932, and thereafter until terminated by either party on six months' written notice, by either party to the other. In July 1932, the defendants ceased to act as selling agents for the plaintiff and a dispute arose between the parties as to what amount, if anything, was owing the plaintiff by the defendants and the plaintiff brought this suit. In its statement of claim it avers that on August 7, 1930 they shipped to the defendants, and invoiced the same at the retail price, one bench, Factory Model No. 304, $11; January 23, 1931, five piece suite, Factory Model No. 321, $311.75; October 10, 1930, one bed and one chest, Factory Model No. 326, $118, March 31, 1931, one suite, Factory Model No. 319, $299.75.

The plaintiff's statement further avers that on January 16, 1932, pursuant to defendants' order No. 3507, the plaintiff sold to the defendants a bedroom suite Model No. 318, and one suite Model 329, all for the sum of $273.00.

Claim was also made for the market value of certain photographs which were furnished, amounting to $52.50; it is also averred that $143.80 should be charged back against the commissions paid due to defaulting purchaser and in all the plaintiff claims $1211.48.

The affidavit of defense avers that the bench referred to was damaged by the General Manager of the plaintiff company and was afterwards returned to the plaintiff company by express. That the suite No. 321 for $311.75, was sold to a certain party named, and that the plaintiff, prior to bringing suit, paid to the defendants their commission on this suite; that Model 326 was sold with the consent of the plaintiff, that the plaintiff thereafter billed and charged the defendants' account with this suite and became liable to pay the defendants the commission therefor. That as to Model 319, the defend-

ants sold this suite with the consent of the plaintiff to a designated person, that the plaintiff charged the same with other furniture to the purchaser thereof and owed the defendants the commission on the sale. That as to Order 5507 Model 318, they did not receive it and that the suite, Order No. 5507, was Model 319; that Model 329 was replevined by the plaintiff in the City of New York, and custody given to the Marshal who served the writ; that suite 318 which should have been suite 319, was in possession of the plaintiff at the plaintiff's premises in the furniture company space of the New York Furniture Exchange, and was in possession of the plaintiff at all times and never in possession of the defendants; that the photographs were simply worn out and of no value; that the commissions alleged to be due were amounts in dispute in the litigation had in New York, as set forth in the New Matter.

The issues created by these pleadings present the question of whether the plaintiffs did ship on January 23, 1931, Model 381; October 10, 1930, Model 326; March 31, 1931, Model 319; January 16, 1932, Model 316 and Model 329 on the same date, and whether there are any commissions due.

The jury returned a verdict for $989.56 and, after motion was made for a new trial, judgment was directed to be entered on the verdict. Defendants appealed.

The assignments of error relate to the admission of evidence and the charge of the court.

No evidence was presented at the trial as to the photograph item.

All of the assignments in regard to the admission of evidence involve the same question viz: whether the evidence should have been excluded, and may be considered and disposed of together.

Appellant contends that plaintiff, having sued in assumpsit, it could not recover on evidence of an alleged

conversion of the property. Under the uncontradicted evidence, defendants were bound, under the agreement between the parties, either to pay for the furniture consigned, or to account for it. This applies to all of the shipments, excepting the two suites of furniture set forth in paragraph 9 of plaintiff's statement, one Model No. 318, and the other model No. 329, the amount claimed thereon being based on a direct sale to defendants.

Appellee contends that under the terms of the oral, as well as the written contract, and the circumstances of the case, it was entitled to recover the value of the goods on the failure of defendant to account for the same. With this proposition, we are in entire accord.

Although at common law assumpsit would not lie for a conversion, an action for money had and received would lie if the party sought to be charged had sold the goods. The action for money had and received was included as a count in assumpsit at common law, and has come over into our present practice on an action in assumpsit by the Act of 1887, May 25th, P. L. 271, Sec. 1 (12 PS Sec. 1).

In 1850 in the case of *McCullough v. McCullough,* 14 Pa. 295, the Supreme Court recognized and affirmed the principle that where the defendant had the plaintiff's goods for sale and refused to return or account for them, a sale would be presumed in the absence of testimony denying a sale and receipt of the money, and the tort could be waived and recovery allowed in assumpsit. In that case the lower court charged, on p. 296: "The court thinks that, if the defendant took the boards down the river, to market, for the purpose of selling them, and making merchandise out of them, the plaintiff may recover in this suit. It may be true that trover would lie. But the plaintiff might waive the tort, and treat the transaction as a sale, and ask to recover the value of the property only. If the jury be-

lieve the defendant assumed ownership over the property, and ran it to market as merchandise, and for the purpose of selling, we think he may recover in this form of action, in the absence of any evidence on part of the defendant to rebut the presumption of a sale and receipt of the money." And this was affirmed on appeal.

The principle of the McCullough case was affirmed in 1910 by this court in the case of *Rees & Sons Co., Inc. v. Western Exposition Society,* 44 Pa. Superior Ct. 381, where the court said, beginning at p. 383: "There can be no doubt of the existence of a general rule which in substance declares that where the personal property of one has been wrongfully taken by another and remains in his possession, the owner cannot recover its price or value in an action of assumpsit. ......

"There are, however, and have been long a number of exceptions to the general rule as widely and as completely recognized as the rule itself. Thus where it could be shown that the goods wrongfully converted had been sold, it has been held that the owner might waive the tort and maintain on action of assumpsit for their price. The principle on which the exception appears to rest is that the wrongdoer has by selling the goods asserted in the strongest manner his title to and right of dominion over them. He has put it out of his power to respond in an action against him for the recovery of the goods themselves. He has voluntarily placed himself in the attitude of one who had bought the goods, and although he did not in fact promise or intend to promise to pay for them, the law makes such promise for him, and it is upon the promise thus raised by the law the plaintiff's right to maintain assumpsit rests. Even where no such sale has been in fact shown, the law has under certain circumstances presumed such a sale and again raised the promise on the part of the defendant to pay just as if the sale had been proven.

Such was the case long ago decided by LORD MANSFIELD where one who had wrongfully gotten possession of a ticket for a masquerade party refused to account for it to the lawful owner of it. In delivering the opinion of the court in that case that famous judge said: 'If he sold the ticket and received the value of it, it was for the plaintiff's use because the ticket was his. Now, as the defendant has not produced the ticket, it is a fair presumption that the defendant had actually received the money for the ticket.' The plaintiff was permitted to recover."

The Rees case was in turn affirmed in 1931 by this court in *Rodgers v. Studebaker Sales Co.,* 102 Pa. Superior Ct. 402, 157 A. 6, on page 405, where the defendant had sold the plaintiff's car and had refused to turn over or account for the proceeds, or to reveal what the sale price was. The court held that under these circumstances, the plaintiff could recover the value of the car in assumpsit.

Appellant further contends that it was error to permit appellee in proving its case, after alleging in its declaration that certain goods were shipped or sold to appellants on specified dates and remained unpaid for or unaccounted for, to show failure to pay for or account for the specific shipments or sales, by showing all shipments of goods of that identical description to appellants and showing that all shipments were properly accounted for by appellants except the shipments or sales on the dates specified in the declaration.

In other words, appellee undertook to prove not only that there were suites of the type involved unaccounted for, but also that the suites not accounted for were the particular ones specified in the statement of claim. That this was the method followed by appellees is also apparent from the charge of the court from which we quote: "Now you cannot take at random any suite there, of a certain number, which the de-

fendants are charged with being liable for either the return of it or the price of it. You must follow out the allegations contained in the plaintiff's statement, when it comes to that. If you find the defendants have not accounted for a suite of furniture, or articles of furniture, with which the plaintiff alleges they are charged in its claim, then you must find that they were the same items of furniture that plaintiff alleges it shipped on these dates. ...... The burden of proof is upon the plaintiff the Montour Furniture Company, to satisfy you by a fair preponderance of the evidence that the articles, the certain suite numbers or certain articles of merchandise claimed by the plaintiff to remain unaccounted for, were shipped and received by the defendants as shown in the statement of claim, on the dates mentioned, and are the same numbers of suites, which the Court gave you, before you can find a verdict for it."

The only question involved is the method of proof, and the evidence as to the other suites of the particular numbers as those involved in the action is for no other purpose than to show that the suites declared on were not paid for. The plaintiff is not in its pleading required to disclose its method of proof: *Moore v. Susquehanna Mutual Fire Insurance Co.*, 196 Pa. 30, 46 A. 266; *Kress House Moving Co. v. George Hogg Co.*, 263 Pa. 191, 106 A. 351.

Plaintiff, in showing the entire transactions between it and defendants, by a process of elimination showed that the suites in controversy were the only ones unaccounted for. Plaintiff could in its case in chief simply have presented proof of the shipments of the particular items in controversy, and that the same had not been paid for or accounted for. If defendant's evidence went in contradiction of this testimony on behalf of plaintiff, it certainly would have been competent for the latter in rebuttal, to have given the history and details of all of the dealings, in order to meet the al-

legations as to the persons to whom shipments or deliveries had been made. It was within the discretion of the trial judge to admit in chief, what is properly rebuttal testimony, and if this discretion is not abused, the admission is not reversible error: *Fisher v. Ruch,* 12 Pa. Superior Ct. 240; see also *Kress House Moving Co. v. George Hogg Co.,* supra. We do not think that appellants were prejudiced by the admission of the testimony referred to. They did not plead surprise nor ask for a continuance. In fact, Julius Sakolsky, one of the defendants, appellant, had in his hand, on the witness stand, a book containing a complete record of all the transactions with appellee during 1930, 1931 and 1932.

Appellant further contends that the court should have ruled as a matter of law that a shipment by bill of lading, showing the consignee to be "Montour Furniture Company, care of J. & H. Sakolsky", left the furniture in the control of the appellee and was not a shipment to J. & H. Sakolsky, the appellants, and that such proof constituted a variance from the statement of claim that the plaintiff "shipped or caused to be shipped" certain furniture to the appellants. The testimony was that the furniture actually went into the possession and control of the appellants and that for all purposes was treated as a shipment to the appellants. By the verdict of the jury, it is settled that this was a shipment to the appellants. By the Act of 1911, June 9, P. L. 838, Sec. 40 (b) 6 PS Sec. 90, clause (b) (The Uniform Bill of Lading Act) the form of the bill of lading affects only the title to the property. The rights and liabilities of the parties as between themselves are governed by the contract existing between them, irrespective of the bill of lading: *Dooley v. N. Y. Central, etc.,* 62 Pa. Superior Ct. 237. Appellants became chargeable with the furniture when it was received by them, and the form of the bill of lading is immaterial.

Appellants complain of the charge of the court, alleging that it put the burden of proof on the defendants. A careful reading of the charge as a whole, and particularly the portion which we have quoted supra, does not bear out this criticism. The case was well tried and fairly submitted and we find no error which would warrant a reversal of the judgment.

The record is very voluminous, and with the brief, covers 438 pages. The issue was very simple and free from difficulty. We do not think that the trial of an action at law should resolve itself into a game of chess in which the result depends on the finesse of the contestants. Courts sit for the administration of justice, and where that end has been accomplished, we will not reverse except for substantial error or for an abuse of discretion by the trial judge.

We believe substantial justice has been done in this case.

The assignments of error are overruled and judgment affirmed.