**STATE LINE & SULLIVAN R. CO. v. PHILLIPS. \***

**No. 6411.**

Circuit Court of Appeals, Third Circuit.

June 14, 1938.

*Writ of certiorari denied 59 S.Ct. 103, 83 L.Ed. —.

Lawrence ·E. Green, of Boston, Mass., for appellant.

·Arthur P. Curran, of Washington, D. C., for appellee.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

State Line & Sullivan Railroad Company, the appellant, possesses a single track railroad, wholly located in Sullivan and Bradford Counties, Pennsylvania, purchased by it in 1874, with certain lands and coal mining properties, for the sum of $1,000,000. Upon April 14, 1884, the appellant leased the railroad property, other than rolling stock and similar equipment to Pennsylvania and New York Canal Railroad Company for a period of fifty years, the lease to terminate upon April 30, 1934. The rental agreement provided for annual payments of $36,000 for the first three years and for $40,000 a year thereafter. The lease was assigned to Lehigh Valley Railroad Company upon December 1, 1888.

The suit at bar is for the recovery of Federal income taxes assessed and collected by the appellee for the years 1927, 1928 and 1929. The appellant claims that it is entitled to deduct the sum of $65,220.17 from its gross income for each of the years referred to because of the obsolescence of the railroad property. Though the appellant made no claim for obsolescence prior thereto, in March, 1931, it took the position that obsolescence was then apparent which, commencing in 1927, would cause the railroad line to become 100% obsolete upon April 30, 1934, the date of the expiration of the lease.

There is no doubt that changing economic conditions have worked disaster upon the fortunes of the appellant. Without going into great detail, we think it is sufficient to state that beginning with the year 1913 there was a substantial decline in the amount of coal produced and shipped from mines in Sullivan County. This decline was precipitous from 1926 to 1931, followed by a slight increase in production and shipment from 1932 to 1934. The population in Bradford and Sullivan Counties decreased substantially from 1900 to 1930. In 1927 a concrete highway was completed from Towanda to Dushore, connecting with a principal arterial highway following the level of the Susquehanna River, affording an easy outlet by truck for coal from this area. This highway drained traffic from the railroad.

In February, 1934, the Lehigh Valley Railroad Company made an offer to renew the lease for one year following April 30, 1934, for a rental of $20,000, subject to the provision that the situation should be re-examined by the parties from time to time in order that a basis for subsequent annual rentals, if any, might be agreed upon. This offer made was refused by the appellant which made no counter-offer. The appellant and the Lehigh Valley Railroad Company then applied to the Interstate Commerce Commission for permission to abandon operation of the railroad. The basis for abandonment proposed by the Lehigh Valley Railroad Company to the Interstate Commerce Commission was the refusal of the appellant to renew the lease. The appellant in its application for abandonment contended that it could not operate the railroad since it did not possess necessary organization, equipment or funds. The Interstate Commerce Commission rejected both applications on January 7, 1935.

In its claims for refund of taxes the appellant determined the period when its railroad properties would be 100% obsolete as the year 1934 for reasons which fall into the following three categories: (1) The Lehigh Valley Railroad Company would not renew the lease; (2) the depletion of coal deposits in the territories adjacent to the railroad and changed conditions of mining had reduced the line's freight tonnage to the vanishing point; and (3) that depression conditions in the mines along the line of the railroad would

render it impossible to gain renewal of the lease upon any terms whereby the railroad property could be operated without loss, and consequently the line must be abandoned. The original lease provided that the lessee should keep the railroad line in good condition. The proposed lease for a year contained similar terms, but the appellant takes the position that the proposed rental of $20,000 a year for a one year period would cause the loss, even of the salvage value, of $127,500.

The appellant instituted suit in the court below for the recovery of $11,193.63, with interest, this sum constituting the total of refunds which would be due it if obsolescence were allowed at the claimed yearly rate. Judgment was entered in favor of the appellee and against the appellant. From this judgment the appeal is taken.

The case was tried to the court without the intervention of a jury. Section 234(a) (7) of the Revenue Act of 1926, 44 Stat. 42, and Section 23(k) of the Revenue Act of 1928, 26 U.S.C.A. § 23(*l*), which are identical, provide:

"In computing net income there shall be allowed as deductions:

" * * * reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence * * *".

■ In computing its taxable income therefore a corporation may deduct an allowance for depreciation, and quite apart therefrom may also make deductions for obsolescence. Obsolescence has been variously defined. In United States Cartridge Co. v. United States, 284 U.S. 511, 516, 52 S.Ct. 243, 245, 76 L.Ed. 431, Mr. Justice Butler stated: " 'Obsolescence' may arise from changes in the art, shifting of business centers, loss of trade, inadequacy, supersession, prohibitory laws, and other things which, apart from physical deterioration, operate to cause plant elements or the plant as a whole to suffer diminution in value." In Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 654, 51 S.Ct. 262, 264, 75 L.Ed. 594, obsolescence was defined as: "The condition or process by which units gradually cease to be useful or profitable as a part of the property, on account of changed conditions."

Obsolescence obviously is akin to capital loss. Its allowance constitutes an anomaly since it is set up prior to its actual occurrence and at a rate per year based upon an estimated future 100% state of uselessness. When obsolescence has occurred property must possess value solely as salvage or scrap.

Now the contentions of the appellant may be stated briefly as follows: It contends that due to changed economic conditions and changes in the physical resources of the mining properties adjacent to the railroad line the railroad property became and was obsolete upon April 30, 1934, the condition of obsolescence commencing in 1927 and becoming apparent in March, 1931.

■ In his opinion the learned District Judge stated (17 F.Supp. page 609): "During the tax years [1927, 1928 and 1929] in question, was there a reasonable certainty that plaintiff's railroad would become commercially useless on April 30, 1934?" The trial court therefore applied a rule of reasonable certainty, that is to say, it put the burden upon the taxpayer to establish with a reasonable degree of certainty that the property would become obsolete at the time specified. Whatever degree of proof may have been necessary to establish obsolescence prior to the decision of the Supreme Court in Burnet v. Niagara Falls Brewing Company, supra, it is established by the decision referred to that such weight of evidence as would " * * * reasonably support a verdict for a plaintiff in an ordinary action for recovery of money fairly may be deemed sufficient." The trial court therefore had in mind and applied the wrong rule.

This error, however, does not constitute a basis for the reversal of the judgment of the trial court. Nor is it necessary for us to pass upon the contention of the appellee that since trial was had to the court without a jury by stipulation of the parties, the general verdict of the trial court had the same effect as a general verdict by a jury, preventing us from passing upon the weight of the evidence. See McCaughn v. Real Estate Company, 297 U.S. 606, 608, 56 S.Ct. 604, 605, 80 L.Ed. 879; Fleischmann Co. v. United States, 270 U.S. 349, 356, 357, 46 S.Ct. 284, 287, 288, 70 L.Ed. 624; Harvey Co. v. Malley, 288 U.S. 415, 418, 419, 53 S.Ct. 426, 427, 77 L.Ed. 866; Eastman Kodak Co. v. Gray, 292 U.S. 332, 336, 337, 54 S.Ct. 722, 724, 78 L.Ed. 1291; See also

Sections 649 and 700 of the Revised Statutes, 28 U.S.C.A. §§ 773, 875.

We do not have to pass upon this contention because the learned District Judge stated in his opinion: "The evidence as a whole clearly indicates that the plaintiff's railroad was a commercially useful venture in 1934 * * *". The trial court was able to make this finding from the point of view of January, 1937, and in reviewing the questions presented this court has a similar advantage. There is ample evidence to support the conclusion of the trial court that the railroad was a commercially useful venture in 1934. It therefore becomes immaterial as to whether or not the appellant was compelled to prove as of 1927, 1928 and 1929 that the railroad would become commercially useless in 1934, with "a reasonable degree of certainty" or by the mere preponderance of evidence, because the District Court has found the existence of commercial usefulness in 1934, and the evidence as a whole does support such a conclusion. Without dwelling upon this evidence in detail, we think the fact that a year's lease was offered by the Lehigh Valley Railroad Company to the appellant upon February 13, 1934, at a rental of $20,000, and that the railroad property upon that date was being used as a common carrier, is sufficient to prove substantial commercial value in the railroad property upon April 30, 1934. Renziehausen v. Lucas, 3 Cir., 31 F.2d 675, affirmed 280 U.S. 387, 50 S.Ct. 156, 74 L.Ed. 501. In fact such rental, if capitalized, would confer upon the railroad property a value in excess of $300,000, and since the proposed lease provided for the maintenance of the property by the lessee in good condition, no salvage or scrap value would have been lost to the appellant by accepting its terms. Since we deem it to be apparent that very substantial commercial value attached to the railroad property in 1934, we need not dwell upon this subject.

In view of the foregoing we need not deal with the conclusion of the trial court objected to by the appellant that the appellant failed to establish by proper and sufficient evidence the cost of the railroad or its fair market value as of March, 1913.

One substantial point remains to be considered. Edwin C. Mann, who was assistant to the executive vice-president of the Lehigh Valley Railroad Company, was the lessee, was called by the appellant and on direct examination was asked the following question: "Have you an opinion from your connection with the Lehigh Valley Railroad, and your experience and knowledge of the earnings, expenses, and traffic carried by the State Line Branch, as to the value of the State Line Branch of the Lehigh Valley Railroad Company on April 30, 1934?" The "State Line Branch" of the Lehigh Valley Railroad Company is in fact the railroad property here under discussion. The appellee objected, the objection was sustained, but the transcript of record does not clearly show what transpired thereafter. A careful examination convinces us that appellant's counsel asked for an exception, but whether such was or was not allowed by the trial judge does not appear clearly. It is plain, however, that the testimony of the witness was excluded. The appellant then offered proof that the witness would have testified that in his opinion the State Line & Sullivan Railroad Company possessed no value as a carrier upon April 30, 1934.

It is the contention of the appellee that Mann was not properly qualified to testify as to the value of the railroad as of April 30, 1934. We cannot sustain this contention. We think that the witness was shown as properly qualified by experience and knowledge to express his opinion as to the value of the railroad property on April 30, 1934, and we think that it was error for the trial court to have excluded his testimony. In our opinion, however, it was not reversible error. There is so much evidence showing substantial commercial value existing in the railroad property as of April 30, 1934, that the opinion of this witness, no matter how well qualified, could have had but slight effect towards overturning the decision reached in the mind of the District Judge. In fact its probative force is inconsequential. Tracy v. Commissioner, 6 Cir., 53 F.2d 575, 579, certiorari denied 287 U.S. 632, 53 S.Ct. 83, 77 L.Ed. 548; Cohansey Glass Co. v. First National Bank of Philadelphia, 3 Cir., 251 F. 177, 180; Grand Valley Water User's Association v. Zumbrunn, 8 Cir., 272 F. 943, 947; Yazoo & Mississippi Valley R. Co. v. Mullins, 249 U.S. 531, 533, 39 S.Ct. 368, 63 L.Ed. 754; Reavis v. Fianza, 215 U.S. 16, 25, 30 S.Ct. 1, 54 L.Ed. 72, and Sac and Fox Indians v. Sac and Fox Indians, 220 U.S. 481, 488, 31 S.Ct.

473, 55 L.Ed. 552. The rule enunciated by the cases just cited is followed in the Pennsylvania Courts. Paley v. Trautman, 317 Pa. 589, 177 A. 819; Montour Furniture Co. v. Sakolosky, 125 Pa.Super. 512, 189 A. 761.

The judgment of the court below is affirmed.