**DETROIT & WINDSOR FERRY CO. v. WOODWORTH, Former Collector of Internal Revenue.**

No. 8342.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1940.

Hal H. Smith, of Detroit, Mich. (Hal H. Smith, Joseph A. Vance, Jr., and Beaumont, Smith & Harris, all of Detroit, Mich., on the brief), for appellant.

Leon F. Cooper, Sp. Asst. to Atty. Gen. (Sewall Key and Leon F. Cooper, Sp. Assts. to Atty. Gen., John C. Lehr and J. Thomas Smith, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment dismissing petition to recover income taxes paid under protest for the calendar years 1929 and 1930.

For many years prior to the years in question, and up to the time of hearing, appellant has owned and operated a ferry business on the Detroit River between Detroit, Michigan, and Windsor, Ontario. While the record does not definitely reveal the full extent of appellant's business operations, it is evident that in addition to its ferry it operates excursion boats. Prior to November, 1929, appellant handled a major part of the traffic between Detroit and Windsor. At that time an international bridge, constructed across the Detroit River about two miles from the line of appellant's ferry, was opened to traffic. In November, 1930, a tunnel for foot and vehicular traffic was opened under the Detroit River, a few feet from appellant's Detroit docks, running to the business center of Windsor.

The net earnings of appellant's ferry department, before deduction for obsolescence, in the taxable years 1928, 1929, and 1930, were $562,653.83, $675,124.14, and $181,062.44, respectively. In each year from 1931 to 1937, inclusive, appellant operated the ferry business at a substantial loss.

Appellant deducted as items of "obsolescence" on its four ferry boats and ferry equipment $365,059.61 for 1928, and $358,755.16 and $358,755.18 for the years 1929 and 1930, respectively. The Commissioner allowed a deduction for obsolescence for 1928 in the sum of $227,348.67. In redetermining appellant's tax liability for 1929 and 1930, however, the Commissioner allowed as deduction the usual depreciation on appellant's equipment, and with respect to 1929, also allowed as a deduction $49,437.03 on account of the loss of the useful value of the ferryboat Pleasure, which was retired from ferry service in 1929. The deductions claimed for obsolescence in the years 1929 and 1930 were disallowed. Appellant paid the taxes assessed, and later filed claims for refund based upon the deductions claimed for obsolescence. These claims were refused, and this proceeding was instituted.

The sole question is whether appellant is entitled to a deduction from its income tax for the taxable years on the ground that its ferry facilities became obsolescent by reason of the construction and operation of a bridge and tunnel, both competitive, which caused it to operate at a loss, though still conducting its ferry business and using a major part of its equipment therein.

The statute and regulation involved are § 23 of the Revenue Act of 1928, 45 Stat. 791, 799, 26 U.S.C.A. Int.Rev.Acts, page 356, and Treasury Regulation 64, Art. 206.[1]

The District Court found that the construction of the competitive bridge and tunnel did not make obsolete appellant's ferry equipment, which has been, and still is, used for the same purposes for which it was acquired. The court also held that

---

[1] Revenue Act of 1928, c. 852, 45 Stat. 791, 799:

§ 23. "In computing net income there shall be allowed as deductions: * * *

"(k) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *"

Treasury Regulations 74, Art. 206:

"With respect to physical property the whole or any portion of which is clearly shown by the taxpayer as being affected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost (or other basis) at the end of its economic term of usefulness, a reasonable deduction for obsolescence, in addition to depreciation, may be allowed in accordance with the facts obtaining with respect to each item of property concerning which a claim for obsolescence is made. No deduction for obsolescence will be permitted merely because, in the opinion of a taxpayer, the property may become obsolete at some later date. This allowance will be confined to such portion of the property on which obsolescence is definitely shown to be sustained and can not be held applicable to an entire property unless all portions thereof are affected by the conditions to which obsolescence is found to be due."

"Competition, resulting in a decrease or entire elimination of profits, is not a proper ground for the allowance of a deduction for obsolescence of assets which are continued in use in the business as an income-producing factor and, for all that is known, may be continued in use as such until the end of their normal useful life."

Appellant contends that there need be no cessation at a definite future time of the physical use of the property to justify the allowance for obsolescence, urging that such deductions are allowable notwithstanding its continued use of the property for its original purpose, without any evidence of intention to abandon it, so long as the revenue-producing power of the property is impaired.

■ We think the judgment of the District Court must be affirmed. Obsolescence is the state or process of becoming obsolete, and obsolete means no longer in use; disused as being antiquated; of a type or fashion no longer current, or worn out. Webster's New International Dictionary, 2d Ed. The clause in the statute, "including a reasonable allowance for obsolescence," provides for an allowance resulting from the disuse of the property in the business. Renziehausen v. Commissioner, 3 Cir., 31 F.2d 675, affirmed Renziehausen v. Lucas, 280 U.S. 387, 50 S.Ct. 156, 74 L. Ed. 501. Cf. State Line & Sullivan Rd. Co. v. Phillips, 3 Cir., 98 F.2d 651, 120 A.L.R. 441. To permit the allowance, therefore, while the property is being continuously used for its original purpose, and while no intention to discontinue its use appears, is to make an allowance for a condition the opposite of obsolescence.

■ Under the regulations, before an allowance for obsolescence can be made, the taxpayer must make a clear showing that in the taxable years the property was "affected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life." These regulations, under the familiar rule, in so far as they are not inconsistent with statute, have the force and effect of law. Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297. In order that the taxpayer may claim a deduction for obsolescence, it must appear with reasonable certainty that obsolescence will take place. Lassen Lumber & Box Co. v. Blair, 9 Cir., 27 F.2d 17. The burden of proof is on the taxpayer to establish by clear and convincing evidence that it is entitled to the claimed deductions. Burnet v. Houston, 283 U.S. 223, 227, 228, 51 S.Ct. 413, 75 L. Ed. 991; North American Coal Corp. v. Commissioner, 6 Cir., 97 F.2d 325. The taxpayer must show with reasonable certainty (1) that the property is becoming obsolete, and (2) when it will be obsolete; that is, he must show what is the normal life of the equipment, and that the property will be obsolete before the end of that normal life. Here, instead of disclosing obsolescence, the record establishes that seven years after it was claimed by appellant that the property would be obsolete, it was still in constant use with the exception of the ferryboat Pleasure, for which a deduction was allowed on account of the loss of useful value. Also there is no prospect whatever that the use of the boats and equipment in ferry transportation will be terminated. This is not the clear showing required by the regulations. The usual depreciation deduction of 2 to 3.7% has been allowed to cover wear and tear on the assets during their normal life, thus showing that the normal life of the equipment was calculated to be approximately 35 to 50 years, depending on material and structure. There is nothing to indicate that the boats now in regular use will cease to be used before the end of their normal life. The regulations specify that no deduction will be permitted merely because in the opinion of the taxpayer the property may become obsolete at some later date. Viewing the record in the light most favorable to the taxpayer, all that it discloses is that the taxpayer thinks the equipment will be abandoned some time; but this does not entitle it to an allowance for obsolescence.

■ Moreover, the District Court found that appellant has not "concluded or determined to discontinue the operation of its ferry business at any time, and it has no present intention of discontinuing the operation of the said business at any definite time," and this finding has substantial support in the record. In 1927, after the taxpayer had knowledge that the bridge would be built, it contracted to purchase the steamer Cadillac. No assertion of a claim for obsolescence was made until March, 1929, when the income tax return for 1928 was filed. The board of directors at no time took any formal action with reference to the question of obsolescence. At the time of the hearing in 1938, the

major part of the equipment was still being used regularly in the ferry business. Three boats were in regular operation until 1932, with the Britannia being used as a substitute boat since that time. In 1937, seven years after the end of the period of claimed obsolescence, 1,700,000 passengers and 290,000 vehicles were transported. Appellant continues to pay the annual license fee to the city of Detroit to operate the ferry business, and up to 1937 it secured a similar license from the Canadian authorities. No effort has been made to liquidate the business, and the company has not been dissolved. We think that these facts do not sustain a claim for deduction on account of obsolescence. Mere diminution in value while the assets are still used is not a proper basis for obsolescence deduction. Cf. State Line & Sullivan Rd. Co. v. Phillips, supra.

■ The decisions in Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S. Ct. 260, 75 L.Ed. 588, and Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, have no application here. In those cases the principal question was whether obsolescence could be effected by the passage of a prohibitory statute, and upon that point the doctrine of the cited cases explained and limited the decisions in Clarke, Collector, v. Haberle Crystal Springs Brewing Co., 280 U.S. 384, 50 S.Ct. 155, 74 L.Ed. 498, and Renziehausen v. Lucas, supra. These cases held that when a business is extinguished as noxious under the Constitution, the owners cannot demand from the Government a partial compensation in the form of an abatement of taxes otherwise due, and that Congress did not provide for such a partial compensation by the use of the word "obsolescence." The gist of the Burnet and Gambrinus cases is that the taxable income of the brewer should be arrived at according to the rules that govern taxable incomes of others. While it is true that the court said that there is no hard and fast rule that the taxpayer must show that his property will be scrapped or cease to be used or useful for any purpose before any allowance may be made for obsolescence, (Burnet v. Niagara Falls Brewing Co., supra), the court went on to emphasize the rapid advance toward prohibition, with its warning to the brewer that his business would probably be brought to an end at an early date. It points out that prohibition was established in January, 1919, to take effect one year later, and that this was before the tax return for 1918 was due, and concludes that in the early part of 1918 the company was abundantly justified in concluding that upon the taking effect of prohibition it must cease to use its brewery for making beer. These cases, then, present the situation where the continued use of the equipment for the purpose for which it was designed was made impossible by the Eighteenth Amendment to the Constitution. Notice of the date when the use of the equipment for such purpose must cease was imposed upon the taxpayer by statute, and the time at which the equipment would become obsolete was definitely determined by operation of law. Moreover, in each case the use of the equipment for the production of beer was discontinued. In the Burnet case, the company was dissolved in 1921, and the property was leased for a nominal figure. In the Gambrinus case, at the time of hearing the property was not being used for its original purpose. These cases hence do not reach the situation presented here. There the evidence conclusively showed a definitely contemplated abandonment, substantially consummated during the taxable period; but here abandonment is neither contemplated nor intended, and the equipment claimed to be obsolete was used at least seven years after the tax period, for the very purpose for which it was built and designed.

■ The circumstance that the Commissioner allowed a deduction for obsolescence in 1928 does not affect the question. The fact that the Commissioner previously computed income tax on an erroneous basis does not estop him from computing the tax on the same items on a correct basis in later years. Schafer v. Helvering, 65 App.D.C. 292, 83 F.2d 317.

The judgment is affirmed.