## Kaplan v. Bucks County Legal Aid Society

*Steven M. Gordon*, for plaintiffs.
*Jay H. Karsch*, for defendants.

GARB, *J.*, January 28, 1980—Plaintiffs have filed a two count amended complaint in assumpsit and trespass against the Bucks County Legal Aid Society and J. Michael Ruttle, Esq., an attorney employed by that organization, as the attorneys for Deborah Sims, defendant. The complaint alleges that plaintiffs sue as individuals and trading as Oakwood Homes Co., a partnership, as the owners

of Log College Apartments in Warminster Township, Bucks County, Pa. wherein defendant Sims was a resident lessee in apartment 18C. It is alleged that Sims was in breach of her lease by virtue of her alleged failure to pay the agreed upon rent for a number of months as a result of which plaintiffs instituted appropriate legal proceedings in ejectment in this court as a result of which a writ of possession was issued directing the sheriff to deliver possession of Sims' apartment to plaintiffs. The writ of possession was issued by the prothonotary and served upon defendant Sims on February 1, 1979, with eviction scheduled for February 10, 1979. On February 9, 1979, it is alleged that the sheriff rescheduled the eviction for February 13, 1979.

The complaint further alleges that on February 12, 1979, the attorney for plaintiffs was notified by Ruttle as attorney for Sims and at a time when he was employed by the Bucks County Legal Aid Society that on February 13, 1979, he would seek a temporary restraining order in the Federal District Court for the Eastern District of Pennsylvania to restrain the aforesaid eviction. On February 13, 1979, a Federal Judge did issue a temporary restraining order restraining the sheriff from evicting defendant Sims and fixing February 20, 1979, as the date for hearing on the preliminary injunction.

At the hearing held in the Federal Court on February 13, 1979, it is alleged that defendant Ruttle, representing defendant Sims, indicated that he held two months' rent in escrow in the amount of $520 and that said escrow money was available for immediate distribution to plaintiffs as part of an overall settlement of the case. It is alleged that

Ruttle further represented that Sims was awaiting settlement of a workmen's compensation claim which would make possible a settlement of plaintiffs' claim for past due rent.

It is alleged that on February 16, 1979, by agreement between counsel for plaintiffs and Ruttle the hearing on the preliminary injunction fixed for February 20, 1979, was continued to allow time to prepare briefs if necessary and to allow time for an attempted settlement. In a second conversation on the same date between Ruttle and counsel for plaintiffs it is alleged that Ruttle confirmed that Sims was awaiting settlement of a workmen's compensation claim and that he held the $520 in escrow. In a third conversation on February 16, 1979, it is alleged that an agreement was reached between Ruttle and counsel for plaintiffs to the effect that Ruttle would immediately disburse the sum of $520 held by him in escrow to the attorney for plaintiffs, that payments of $520 were to be made each month by defendant Sims until Sims' account could be brought up to date (at which time her monthly payments would revert to the normal monthly installments of $260), that interest and late fees would be waived, that the preliminary injunction hearing would be continued generally, and lastly, and significantly, that upon default by Sims the preliminary injunction hearing would be rescheduled and plaintiffs would be free to proceed with eviction proceedings if an outcome favorable to plaintiffs would occur at the preliminary injunction hearing. It is further alleged in the complaint that at the time the aforesaid agreement was made, Ruttle advised counsel for plaintiffs that Sims was in the hospital with a broken leg and, therefore,

would be unable to attend the preliminary injunction hearing originally fixed for February 20, 1979, in any event.

On March 2, 1979, counsel for plaintiffs contacted Ruttle concerning the payment of the $520 allegedly held in escrow by Ruttle and counsel for plaintiffs was advised that on March 9, 1979, defendant Sims had vacated her apartment and that the $520 had been released to Sims' cousin.

It is alleged that Ruttle had no intention of complying with the agreement reached between himself and counsel for plaintiffs and that he entered into the agreement solely for the purpose of delay and with the intention of avoiding the payment of the promised sum of $520 held in escrow. It is further alleged that Sims vacated the apartment on approximately March 1, 1979, and that, after cleaning and repairing the apartment and attempting to again lease the demised premises, plaintiffs were finally able to do so on June 1, 1979. In the first count in assumpsit plaintiffs claim damages of $2,600 against all defendants and in the second count in trespass for the sum of $50,000.

Defendants Bucks County Legal Aid Society and J. Michael Ruttle, Esq. have filed preliminary objections to the complaint which have been submitted to the undersigned for disposition under Bucks County Rule of Civil Procedure*266.

With regard to count one it is obvious that plaintiffs seek damages against defendants Bucks County Legal Aid Society and Ruttle for some breach of a contract entered into between plaintiffs and those defendants. Obviously, those defendants are not liable for any damages sustained by plaintiffs by any breach of contract by Sims with plaintiffs, as a part of her lease, because these defend-

ants were not parties to that contract. Equally as obvious they have no liability to plaintiffs for any derivative damages arising from that contract, they being merely agents of defendant Sims dealing with plaintiffs as agents of a disclosed principal. An agent cannot be held liable for a contract entered into by him on behalf of a disclosed principal in a suit alleging breach of that contract: Geyer v. Huntingdon County Agricultural Association, 362 Pa. 74, 66 A. 2d 249 (1949); Levy v. Conly, 340 Pa. 332, 17 A. 2d 382 (1941), Perlman v. Pittsburgh Cabinets & Builders Supplies, Inc., 191 Pa. Superior Ct. 234, 156 A. 2d 373 (1959); and Montgomery v. Levy, 406 Pa. 547, 177 A. 2d 448 (1962). Conceivably they may be liable for their failure to disburse the sum of $520 held in escrow which they had allegedly promised to disburse to plaintiffs and which they allegedly disbursed to Sims' cousin.

However, we fail to see any basis upon which they can be liable for any damages incurred by plaintiffs for the time during which the apartment was vacant after Sims abandoned it on or about March 1, 1979. By their own complaint, they sought possession through the action in ejectment in Bucks County and if nothing else had happened would have received possession from the sheriff on February 13, 1979. However, even on that date, a temporary restraining order was entered by the Federal District Court with a hearing fixed for February 20, 1979 and, therefore, they could not have gained possession earlier than that date. Up to this point, nothing had happened to the detriment of plaintiffs as a result of any contractual obligations of defendants but rather only because of the representation by defendants of their client. Even when

an agreement was made, it was a part of that agreement that even if there should be a default the preliminary injunction hearing would be rescheduled and plaintiffs would be free to proceed with eviction proceedings if they were successful in that hearing in the Federal District Court. There is no way of telling on this record when that hearing in the Federal District Court would be held subsequently. Conceivably, it could have been delayed for some substantial period of time due to the alleged illness of Sims and certainly that delay cannot be attributable to any contractual obligation between defendants and plaintiffs. Therefore, in the first count in the complaint the most plaintiffs can hope to recover from these defendants is the sum of $520.

As previously noted the second count in the complaint is in trespass and virtually all of the preceding facts are alleged anew in that count. Of course, the dogma regarding the liability of an agent for a disclosed principal does not apply in an action in trespass. An agent is personally liable for his own torts resulting in damage to another even though he is acting within the scope of his employment for a disclosed principal: Eckert v. Merchants Shipbuilding Corp., 280 Pa. 340, 124 Atl. 477 (1924), and McDonald v. First National Bank of McKeesport, 353 Pa. 29, 44 A. 2d 265 (1945). However, the only allegation in this trespass count relating to any tort of these defendants is the assertion in the last paragraph that the actions by these defendants are "of a wilful and deceitful nature." Even assuming that the alleged fraud and deceit is pleaded with sufficient clarity and precision, see Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285 A. 2d 451 (1971), a somewhat dubious proposition, there is no basis in this count upon which to justify a

claim for damages of $50,000. The rule in Pennsylvania regarding the measure of damages in an action for fraud and deceit is the tort rule which permits the plaintiff to recover only his actual loss: Tilghman v. Dollenberg, 418 Pa. 604, 213 A. 2d 324 (1965). In such an action recovery cannot be had for consequential, speculative or conjectural damages. The damages recoverable are only such as can be said to have been the immediate and proximate consequences of the deceit practised by the defendants: Crawford v. Pituch, 368 Pa. 489, 84 A. 2d 204 (1951).

## ORDER

And now, January 28, 1980, it is hereby ordered, directed and decreed that for the reasons assigned in the within opinion the preliminary objections to the complaint are sustained, the complaint is dismissed with leave to plaintiffs to file a second amended complaint within 20 days of the date hereof.