J. HENRY HOLLAND, JR., and MARY JANE B. HOLLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holland v. Commissioner
Docket No. 4948-69.
United States Tax Court
T.C. Memo 1974-135; 1974 Tax Ct. Memo LEXIS 184; 33 T.C.M. (CCH) 611; T.C.M. (RIA) 74135; May 28, 1974, Filed. P. A. Agelasto, Jr., for the petitioners. J. Doyle Tumbleson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: [1] Respondent determined a deficiency in petitioners' Federal income taxes for the taxable year 1966 in the amount of $1,302.85. The issues for decision are: (1) Whether petitioner, J. Henry Holland, Jr., received dividend income from the J. Henry Holland Corporation in the aggregate amount of $1,807.13 during the taxable year 1966; and (2) whether for depreciation purposes the useful *187 life of a warehouse building owned by the petitioners and leased to the J. Henry Holland Corporation is 40 years, as determined by the respondent, or 30 years, as claimed by the petitioners. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners, J. Henry Holland, Jr., and Mary Jane B. Holland, are husband and wife, whose legal residence was Virginia Beach, Virginia, when the petition was filed herein. Their Federal income tax return for the calendar year 1966 was filed with the district director of internal revenue at Richmond, Virginia. J. Henry Holland, Jr. (hereinafter referred to as the petitioner), was the president and sole stockholder of the J. Henry Holland Corporation (hereinafter sometimes called the corporation) during 1966. The home office of the corporation is located at 1301 Ingleside Road, Norfolk, Virginia, where it leases a combination warehouse and office from the petitioners. The corporation sells wire rope, rubber products, and other marine and industrial supplies within a 50 mile radius of Norfolk, Virginia. Dividend Income As president of the corporation, petitioner managed and worked *188 with the corporation's salesmen, and personally called on certain large customers during the year 1966. In conducting his duties as president of the corporation in 1966, the petitioner spent Fridays in Newport News, Virginia, concentrating on one particular account. The balance of his time was spent in Norfolk, Virginia, with occasional visits to the Portsmouth, Virginia area, and once a month he visited Franklin, Vriginia. The toll for tunnel and bridge fares connecting the territory in which he traveled ranged from 40 cents to Portsmouth, Virginia; $1.25 each way to Newport News, Virginia; and $4.50 each way to the Eastern Shore of Virginia. Most of the routine transactions of the corporation in 1966 were handled by the salesmen, while the petitioner concentrated on handling the more complicated transactions. Approximately three or four times a month in 1966 the corporation experienced complicated matters or other problems requiring the special attention of the petitioner. Occasionally, when complicated problems arose, the petitioner called in a factory engineer to assist in making recommendations to customers and on such occassions he paid for the meals of the engineer. *189 During 1966, the petitioner withdrew a minimum of $25 per week from the corporation, which allegedly was an expense account to reimburse him for out-of-pocket expenditures on its behalf. He failed to maintain a record of expenditures made by him of the amounts withdrawn from the corporation. During 1966, the petitioners attended two conventions. Their expenses were paid by the corporation. During 1966, the corporation provided the petitioner with the use of an automobile, which was partially used for company business. In his statutory notice of deficiency the respondent determined that petitioner received dividend income from the corporation in the aggregate amount of $1,807.13 during the year 1966. Respondent computed the fair rental value of the company-owned automobile used by petitioner during 11 months in 1966 at $120 per month to be $1,320, plus gasoline and oil for 11 months at $62.50, or a total of $2,007.50. Respondent calculated petitioner's personal automobile expense to be 22-1/2 percent of $2,007.50, or $451.69. Respondent also determined that the amount of $1,355.44 allegedly spent for travel and entertainment by petitioner on behalf of the corporation *190 was all "dividend" income. Useful Life of Warehouse The warehouse building leased by the corporation from the petitioners contains 27,340 square feet of building area. The building was constructed in three phases, the first section being constructed in 1962, the rear portion in 1964, and the side extension, which is under lease to the Western Electric Company, was added in 1965. The building contains cinder block walls, which are brick veneered across the front and side portions of the property. There is a concrete deck through the building, and the floor in the office has a tile covering. The steel roof, deck, and overhead joists are supported by steel columns. The building has four ground level loading doors and one pit loading ramp. The inside building clearance, or clear span ceiling height of the warehouse, is 19 feet. The warehouse is a structurally sound, well constructed building, which is adequately heated and lighted. The building, which is located in the Norfolk Industrial Park, Norfolk, Virginia, was constructed in accordance with city building codes and regulations. During 1966, the corporation utilized approximately 90 percent of the floor space *191 in the warehouse. The principal product sold by the corporation was wire rope. The wire rope is packaged on reels which measure approximately 48 inches in height and 42 inches wide. The largest item in terms of dimension warehoused by the corporation is cartons of toilet tissue. The toilet tissue is stacked on pallets, with a height of approximately six feet per pallet. The pallets of toilet tissue are stacked three pallets high in the warehouse. The corporation has never returned toilet tissue to the shipper for lack of storage space. Loading and unloading at the warehouse in 1966 was done with a forklift truck. The forklift can run in and out of the loading doors with ease because the warehouse floor is even with the parking area. ULTIMATE FINDINGS 1. During the taxable year 1966 the petitioner received dividend income from the J. Henry Holland Corporation in the amount of $1,407.13 in the form of the personal use of a company-owned automobile and the reimbursement of personal travel and entertainment expenses. 2. The useful life of the warehouse in question is 40 years. OPINION Issue 1. Dividend Income Respondent determined that petitioner, the president *192 and sole shareholder of J. Henry Holland Corporation, received dividend income from the corporation during the taxable year 1966 in the aggregate amount of $1,807.13 in the form of the personal use of a company automobile and the claimed reimbursement of travel and entertainment expense. Petitioners did not claim a deduction on their 1966 Federal income tax return for the expenditures in dispute as ordinary and necessary expenses under section 162, Internal Revenue Code of 1954, [2] or any other governing statutory provision. The additional dividend income under review arises principally from the reimbursing of petitioner by his employer to the extent of $25 per week for his out-of-pocket expenditures allegedly incurred on behalf of the corporation. Respondent contends that the petitioner failed to prove that the company-owned automobile was used exclusively for the benefit of the corporation and that the travel and entertainment expenditures were not established as allowable business expenses under section 162. *193 Respondent's determination is presumptively correct and petitioner has the burden of proving error therein. Flomarcy Company, Inc. v. Commissioner, 324 F.2d 730 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court. Amounts received by a taxpayer in the nature of dividends are includable in gross income under sections 61(a) (7)[3] and 301(c) (1)[4] of the 1954 Code. Sachs v. Commissioner, 277 F.2d 879, 882 (C.A. 8, 1960), affirming 32 T.C. 815 (1959); Commissioner v. Riss, 374 F.2d 161, 167 (C.A. 8, 1967), affirming in part a Memorandum Opinion of this Court; John L. Ashby, 50 T.C. 409, 417 (1968); Challenge Manufacturing Co., 37 T.C. 650 (1962); and Eugene A. Mohr, 45 T.C. 600, 614 (1966). *194 As to the use of the company-owned automobile by petitioner, we note that respondent determined that petitioner used the automobile for personal activities to the extent of 22-1/2 percent (or $451.69) of the total $2,007.50 expended on its overall operation during 1966. The primary issue with respect to the use of the automobile is whether the business purpose (i.e., to call on customers on behalf of the corporation) was sufficiently established by petitioner to meet the requirements of section 162 of the Code. There is no dispute raised as to the fair rental value of the use of the automobile, including gasoline and oil, for the period involved herein. It is well settled that for expenses of the type claimed by petitioner to be deductible under section 162 they must be shown to have been incurred primarily for the benefit of the business carried on by the taxpayer. Harold T. Bradley, 57 T.C. 1, 9 (1971); Robert Lee Henry, 36 T.C. 879 (1961), and cases cited therein. In our opinion the petitioner has not established that the automobile was used exclusively *195 for business purposes. He testimony was general and conclusory. Notably, he testified that he used the automobile to commute to and from work, which indicates that the vehicle may not have been limited to business activities. His testimony does not provide the requisite substantiation to enable us to estimate the time and money he may have expended in using the company-owned automobile on corporate business. On this record we conclude that the petitioner has failed to show any amount for automobile expenditures as ordinary and necessary under section 162 in excess of the amount ($451.69) allowed by the respondent. Likewise, to the extent the petitioner has failed to substantiate that the fair rental value of the automobile used during 1966 was an ordinary and necessary business expense, we hold that he received a constructive dividend which is taxable to him to the extent he received a personal benefit from such use. United States v. Gotcher, 401 F.2d 118, 123 (C.A. 5, 1968). As to the travel and entertainment expenses ($1,355.44), petitioner kept no records; he made *196 no accounting for the moneys which he withdrew from the corporation allegedly for travel and entertainment; and he was unable to adequately testify on these matters from memory. Petitioner did not begin keeping records of business-related travel and entertainment expenses until 1969, after a conference with a revenue agent. His testimony and that of his accountant as to amounts allegedly expended for travel and entertainment in the years subsequent to 1966 are not determinative of the issue. Both witnesses testified that the corporation's business and its expenses had increased after 1966, and hence expenditures from later years do not present a parallel for determining the business and entertainment expense for the taxable year before us. We stated in William F. Sanford, 50 T.C. 823 (1968), affirmed 412 F.2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841, that the requirements of section 274 are in addition to those imposed by section 162, and that the taxpayer has the burden of proving initially that the expenses in controversy are ordinary *197 and necessary and proximately related to his trade or business. Harold T. Bradley, supra.Section 162(a) provides that a taxpayer may deduct the ordinary and necessary expenses paid during the taxable year. Section 274(d) provides that travel, entertainment and gift expenses are not allowable as deductions unless the taxpayer substantiates, either by adequate records or by other sufficient evidence corroborating his own statement, the essential elements pertaining to the nature and business purpose of the involved travel, entertainment, or gift items. [5]
*198 Where a taxpayer fails to maintain adequate records or provide documentary evidence, he must establish such elements (i) by his own statement, whether written or oral, containing specific information in detail as to such elements, and (ii) by other corroborative evidence sufficient to establish such element. Section 1.274-5(c) (3), Income Tax Regs.Also, an employee who owns more than 10 percent of the stock of the corporation by which he is employed is required to personally substantiate expenses incurred on behalf of his employer. Section 1.274-5(e) (5) (ii), Income Tax Regs.
Petitioner contends, on brief, that the substantiation requirements of section 274 have no application in this case as to local transportation and to business meals; that the only substantiation necessary is that required prior to the enactment of section 274; and that the principle in Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930), is applicable. Petitioner further contends that section 274(e) (1) excludes meals from the substantiation requirements, *199 and that section 274(e) (4) expressly excludes expenses incurred by the taxpayer in performing services of another person under a reimbursement arrangement. In essence, petitioner argues that section 274(d) is not applicable because the daily travel and meals involved in the cash disbursements were for local travel and not incurred "while away from home" since virtually all of the travel, including meals, covered a 50-mile radius of Norfolk, Virginia, and did not involve overnight travel. We recognize that the stringent substantiation requirements apply to transportation only when the taxpayer is traveling away from home, and under the circumstances herein the substantiation ordinarily required under section 274(d) for traveling expenses need not be shown. However, the recordkeeping requirements of section 162 are still applicable to local travel expenses and have not been vitiated by section 274(d). See William F. Sanford, supra at 826; and Rev. Proc. 63-4, 1963-1, C.B. 474, 475.[6] As previously mentioned, the petitioner kept no records regarding travel on *200 behalf of the corporation; he made no accounting to the corporation for the money which he drew therefrom for the alleged travel; and his testimony with respect to such travel was at best general in nature. Nevertheless, we are satisfied by his testimony that he traveled on behalf of the corporation in the environs of Norfolk, Virginia, during the taxable year and incurred some out-of-pocket expenses for such purpose for which he was reimbursed. Applying the rule in Cohan v. Commissioner, supra at 544, we have made the best approximation we can on the evidence before us and have concluded that the petitioner spent $400 in travel on behalf of the corporation during 1966. To such extent the $400 is allowed under section 162 and did not constitute dividend income to the petitioner. However, as to the entertainment expenses in controversy ($955.44), it is our view that subsections 274(e) *201 (1) and (4), upon which petitioner relies, do not relieve him of the burden of establishing the remaining elements required by section 274(d), namely, the time and place, the business purpose, and the business relationship of the taxpayer of each person entertained. Rev. Proc. 63-4, 1963-1, C.B. 474, 476. [7] Petitioner testified that he took a customer to lunch about five days a week during 1966 because he could conduct business at a so-called "luncheon meeting" much easier than in his office and that he paid the bill with his own money. He also testified that frequently a factory salesman would visit him in Norfolk and they would have a "luncheon meeting" and that the bill would often be in excess of $30 or $35 which he also paid with his own funds. In this connection, petitioner's general testimony did not specify, among other things, the restaurants where the customers and salesmen were taken for lunch, specific dates of business entertainment at each establishment, the business purpose of the entertainment at each place and the business relationship of those entertained to the petitioner. Moreover, he did not offer any other documentary evidence to corroborate his *202 testimony as to the business purpose of the meals in question. There was also no testimony by any other witnesses which could provide the information required for substantiation under section 274(d). See section 1.274-5(c) (3), Income Tax Regs. As to the petitioner's contention that the expenditures come within section 274(e) (1), namely, the business meal exception to the provisions of section 274(a), and the reimbursement exception under section 274(e) (4), he did not introduce any evidence to show an intent to secure a present or future business advantage on behalf of the corporation or any expense allowance arrangement with the corporation. In these circumstances we conclude that the petitioner has failed to qualify any portion of the claimed meals for deduction under section 162(a), and likewise has failed to meet the substantiation requirements of section 274(d). Accordingly, we sustain respondent's determination as to the claimed entertainment expenses in question. Hughes v. Commissioner, 451 F.2d 975, 977-979 (C.A. 2, 1971), affirming a Memorandum Opinion of this Court; Normen E. Kennelly, 56 T.C. 936 (1971), affirmed *203 in open court without opinion 456 F.2d 1335 (C.A. 2, 1972); George W. Randall, 56 T.C. 869, 875 (1971). We hold that the expenses, except for the $400 allowed for local travel, were paid by the company primarily for the personal benefit of J. Henry Holland, Jr., its president and sole stockholder, and as such constitute constructive dividend income to him during the taxable year 1966 in the amount determined by the respondent. John L. Ashby, 50 T.C. at 417. See also Challenge Manufacturing Co., 37 T.C. at 663; American Properties, Inc., 28 T.C. 1100 (1957), affirmed per curriam 262 F.2d 150 (C.A. 9, 1958); and William K. Coors, 60 T.C. 368, 409 (1973). *204 Issue 2. Depreciation of Warehouse During the taxable year 1966 the petitioners leased a combination warehouse and office building to the corporation. On their 1966 Federal income tax return the petitioners claimed depreciation on the building in the amount of $7,915 on the basis of a 30-year useful life. Respondent determined the useful life of the building to be 40 years within the purview of section 167 of the Code, [8] and disallowed the depreciation deduction as excessive in the amount of $1,978.35. *205 Respondent's determination of useful life is presumptively correct and the burden is upon the petitioners to demonstrate error therein. M. Pauline Casey, 38 T.C. 357, 381 (1962). In Massey Motors, Inc. v. United States, 364 U.S. 92 (1960), the Supreme Court said that the useful life of an asset is "the number of years the asset is expected to function profitably in use." This test is predicated on the assumption that when an asset can no longer be profitably used by the owner, it will be disposed of. The determination of the useful life is a question of fact. M. Pauline Casey, supra at 381. Petitioner contends that the warehouse was economically and functionally obsolete from the date of its construction because of a so-called "design deficiency." He argues that the door entrance to the warehouse lacked a tailgate height of 40 inches from the ground and the ceiling height of the building was only 19 feet from the deck to the overhead joist, which made it more costly to handle merchandise and limited the amount of goods which could be stored. *206 We find no merit in such position. The warehouse was constructed in a modern industrial park in accordance with the building code and regulations of the City of Norfolk. Petitioner concedes that the building is structurally sound, adequately heated and lighted, and does not suffer from a lack of maintenance. No convincing evidence was introduced to show that the inside height of the warehouse was inadequate for its intended use. Petitioner testified that the floor space in the building was used "at least 90 percent" in 1966, and that materials were moved in and out of the warehouse with ease. The evidence shows that forklifts moved the merchandise and supplies through the four ground level loading doors of the building without difficulty. In our opinion these circumstances are not indicative of obsolescence within the intendment of section 1.167(a)-9, Income Tax Regs.
Depreciation has been defined as a deduction based upon an allowance for use of an asset, whereas obsolescence is such an allowance based on abandonment or disuse. Renziehausen v. Commissioner, 280 U.S. 387 (1930). *207 Here the facts do not support petitioner's claim of obsolescence, but to the contrary establish continued and substantially full use of the facilities during the taxable year 1966. There is no evidence that the corporation contemplated the abandonment or disuse of the warehouse in the foreseeable future. Respondent acknowledges that obsolescence may properly be taken into account in determining useful life. See section 167(a); section 1.167(a)-1(b) and 1.167(a)-(9), Income Tax Regs. Obsolescence must be established by the petitioner with reasonable certainty. Indefinite expectations and suppositions are not sufficient to support a claim for obsolescence. James D. Dunn, 42 T.C. 490, 495 (1964); Stevens Pass, Inc., 48 T.C. 532, 541 (1967). Petitioners have failed to prove that the warehouse has had excessive wear and tear, or that the estimated useful life previously used should be diminished by reason of obsolescence greater than had been estimated in computing such useful life. Section 1.167(a)-9, Income Tax Regs.
We do not think the purported deficiencies in design, which are the crux of petitioners' case, rendered the *208 warehouse functionally or economically obsolete at the time of construction or during the year 1966. In our judgment the petitioners have not shown with reasonable certainty that the warehouse will become obsolete before the end of its normal life, and hence have failed to sustain their burden with respect to the claimed obsolescence. Detroit & Windsor Ferry Co. v. Woodworth, 115 F.2d 795 (C.A. 6, 1940), certiorari denied 312 U.S. 692 (1941). To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned on May 10, 1974, from Judge Graydon G. Withey, who heard the case, to Judge Howard A. Dawson, Jr.↩, for disposition. 2. Sec. 162(a) provides in part as follows: (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; ↩
3. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (7) Dividends; ↩
4. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount Constituting Dividend. - That portion of the distribution which is a divident (as defined in section 316↩) shall be included in gross income. 5. Sec. 274(d) and (e) provide as follows: (d) Substantiation Required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home). (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by aequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. (e) Specific Exceptions to Application of Subsection (a). - Subsection (a) shall not apply to - (1) Business Meals. - Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive to a business discussion. * * * (4) Reimbursed Expenses. - Expenses paid or incurred by the taxpayer, in connection with the performance by him of services for another person (whether or not such other person is his employer), under a reimbursement or other expense allowance arrangement with such other person, but this paragraph shall apply - ↩
6. In reply to Question 9, the Revenue Procedure relating to section 274↩ states that the recordkeeping requirements of "existing law continue to apply to expenses for local travel." 7. In reply to Question 11, which relates to a deduction for purchasing a business meal for a customer or prospective customer, the Revenue Procedure states that the taxpayer must record inter alia the cost, the date, the name and place of the restaurant or hotel, and the occupation or other information relating to all of the persons entertained, including designations sufficient to establish a business relationship to the taxpayer. ↩
8. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. Sec. 1.167(a)-1 [Income Tax Regs.] Depreciation in general. * * * (b) Useful life. For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Sec. 1.167(a)-9. Obsolescence. The depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Obsolescence may render an asset economically useless to the taxpayer regardless of its physical condition. Obsolescence is attributable to many causes, including technological improvements and reasonably forseeable economic changes. Among these causes are normal progress of the arts and sciences, supersession or inadequacy brought about by developments in the industry, products, methods, markets, sources of supply, and other like changes, and legislative or regulatory action. In any case in which the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing such estimated useful life, a change to a new and shorter estimated useful life computed in accordance with such showing will be permitted. No such change will be permitted merely because in the unsupported opinion of the taxpayer the property may become obsolete. ↩