Laurence S. AMES and Joy A. Ames, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 78–2637.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1980.

Decided Aug. 27, 1980.

Rehearing Denied Sept. 26, 1980.

694

John J. Burke, Ross, Woodson, Millard, Burke & Woolverton, Pasadena, Cal., for petitioners-appellants.

Robert E. Lindsay, Washington, D. C., argued, for respondent-appellee.

Before SNEED and PREGERSON, Circuit Judges, and TEMPLAR *, District Judge.

SNEED, Circuit Judge:

The petitioners-appellants, the Ames, claimed deductions for the depreciation of improvements built to a lessee's specifications, and the respondent-appellee Commissioner disallowed them, asserting that the appellants assumed too brief a useful life for the assets. The Tax Court agreed. On appeal the taxpayers argue that the Tax Court misunderstood the substantive law, imposed too heavy a burden of proof, and

* Honorable George Templar, Senior United States District Judge for the District of Kansas, sitting by designation.

erred in its principal finding of fact. This court's jurisdiction rests on 26 U.S.C. § 7482(a) (1976). We affirm.

The Ames, who are husband and wife, claimed the disputed deductions in joint returns filed for the years 1970 and 1971. Mr. Ames is a contractor-developer. In 1966 he became aware of an opportunity to lease specially constructed buildings to the California Department of General Services for use as a social services center. One requirement for the project was that the center be near the people it would serve. Ames looked for and found suitably located property that could accommodate buildings of the required floor area. Since the property was in a residential zone, he sought and obtained a nonconforming use permit; the zoning authority conditioned it, however, on occupancy of the land by State, local, or federal agencies. In extensive negotiations the State of California specified what buildings it wanted. Ames purchased the land in 1967 and then made the improvements with a loan tailored to permit repayment out of rentals during the initial lease term. The lender insisted on the lease as security.

Early in the lease negotiations the State set a maximum rental figure based on the floor area of the buildings but later agreed to a lease term of five and a half years in order to guarantee income necessary for Ames to meet costs, service the construction loan, and earn a profit. The lease gave the State two options when the term ended: to purchase the property at a figure equal to the projected value at that time of the land alone, or to renew the lease for a ten year period at a rent that would allow a nine percent return on the value of the land. The lease was to run from February 1, 1969 to July 31, 1974. The State took early occupancy under an early occupancy provision of the lease with the result that the initial term was extended to six years and two months.

The taxpayers calculated and claimed deductions for depreciation of the improvements based on a six year and two month useful life. The buildings' design made them useless for other purposes, and in any case, zoning restrictions forbade commercial occupancy. As for continued use by the State, its negotiating representative had told Mr. Ames that there was no "probable likelihood" that the State would exercise either lease option. At trial Mr. Ames testified that at the time when he estimated the useful life of the improvements for tax purposes, "nobody knew" whether the State would renew. The Ames still own the property.

The Tax Court held the useful life of the improvements to be, as the Commissioner had determined, thirty-two years. *Ames v. Commissioner*, 46 T.C.M. (P–H) ¶ 77,249 (1977). It characterized the Ames' position as one alleging obsolescence. *Id.* at 77–1013. The court declared that since proof of obsolescence requires a showing that "depreciation deductions based upon wear and tear will be insufficient to restore to the taxpayer the basis of the asset because its life has been shortened," it was the Ames' burden to establish "(1) that the improvements involved herein were improvements suitable to only one tenant and (2) that it was reasonable to expect that this tenant would use the facility for only 6 years and 2 months." *Id.* at 77–1013 to 77–1014. By his own admission Mr. Ames "had no way of knowing" whether the State would renew the lease. *Id.* at 77–1014. In a footnote the court commented that the Ames' burden of proof had been that of showing to "'a *reasonable certainty* that the economic useful life of the leasehold improvements would end with the expiration of the initial [lease] term'," but that the same result would have followed had this circuit's less stringent standard, *viz.*, "to a 'reasonable approximation,'" been employed. *Id.* n.4 (emphasis in original); *see Western Terminal Co. v. United States*, 412 F.2d 826, 827 (9th Cir. 1969).

The appellants present several versions of their basic argument. They insist that the useful life of a leased asset should be measured by its income-producing life and not by the duration of its benefit to the leasehold, a proposition implicitly rejected by the Tax Court. They also urge that the Tax Court imposed too heavy a burden of proof, first, by requiring proof to a reasonable certainty, and second, by characterizing theirs as an obsolescence claim. The latter point is a variation on the theme that deductions for depreciation should be based on the income-producing life of the asset because, although the Ames themselves spoke at trial of obsolescence, they appear to object to the label only because it suggests a presumption that useful life is equivalent to the object's inherent physical life. In addition, the Ames criticize the Tax Court's determination of the useful life, which is nominally a finding of fact, *Western Terminal, supra,* at 826–27, as clearly erroneous.

■ Section 167(a) of the Internal Revenue Code expressly permits depreciation deductions for "obsolescence," as well as for "the exhaustion, wear and tear," of assets "used in [a] trade or business" or "held for the production of income." I.R.C. § 167(a). The deductions allowed are portions properly allocable to the appropriate segments of the asset's "useful life." "Useful life" and "obsolescence" are not defined in the Code. The regulations acknowledge that "the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income." Treas. Reg. § 1.167(a)–1(b), T.D. 6500 (first published in 26 C.F.R. Parts 300, 301 (1960)). "Capital expenditures made by a lessor for the erection of buildings or other improvements shall, if subject to depreciation allowances, be recovered by him over the estimated life of the improvements without regard to the period of the lease."[1]  *Id.* § 1.167(a)–4, T.D.

---

1. We understand "estimated life" here to be synonymous with "useful life" and not with "inherent physical life." Nowhere in the regulations on depreciation is the inherent physical

6500, as amended by T.D. 6520, 1961–1 C.B. 52.

The Ames here argue that without regard to the merits of their obsolescence claim, the *taxpayer's* original estimate of the useful life, if reasonable, should control; otherwise, they suggest, there arises a presumption equating useful life with inherent life, in contradiction to Supreme Court teaching. *See Hertz Corp. v. United States,* 364 U.S. 122, 127–28, 80 S.Ct. 1420, 1422–1423, 4 L.Ed.2d 1603 (1960); *Massey Motors, Inc. v. United States,* 364 U.S. 92, 107, 80 S.Ct. 1411, 1419, 4 L.Ed.2d 1592 (1960). The Commissioner responds that the Ames themselves treated the issue below as one of obsolescence; that obsolescence pertains to factors reasonably foreseeable when the asset is first put to use and is therefore, together with ordinary wear and tear, the basis upon which useful life is determined; that the Tax Court did not equate physical life with useful life; and that whether the issue is expressed in terms of normal useful life or obsolescence, the result should be the same.

■ The Commissioner's determination of useful life is presumed correct unless the taxpayer introduces evidence sufficient to support a contrary finding. *Potts, Davis &*

*Co. v. Commissioner,* 431 F.2d 1222, 1225 (9th Cir. 1970). This remains true whether the taxpayer is attempting to prove either a shorter useful life or a useful life cut short by obsolescence.

There is some indication, however, that the cases recognize a difference between the two situations. *Massey* and *Hertz* stand for a rather generous approach to the taxpayer's original estimate. One who buys cars and leases them for some initial period of their inherent lives can fashion the depreciation deduction to suit business needs. The claimed useful life must only bear a reasonable relation to business practice.[2] Consistency provides a check on useful life estimates for assets, like rental cars, that are bought and sold on a regular basis.[3] By contrast, cases in which obsolescence is explicitly considered an issue have usually arisen when supervening events reduced the business value of unique assets previously estimated to have a longer useful life.[4] *Zimmerman v. Commissioner,* 67 T.C. 94 (1976); *Dunn v. Commissioner,* 42 T.C. 490 (1964); *Southeastern Building Corp. v. Commissioner,* 3 T.C. 381 (1944), *aff'd,* 148 F.2d 879 (5th Cir.), *cert. denied,* 326 U.S. 740, 66 S.Ct. 52, 90 L.Ed. 442 (1945). This type of claim may well be more difficult to validate, as the Ames suggest.

---

life of an asset determinative of useful life. That it should have become so in this final sentence of a section that otherwise makes the usual assumptions is impossible to maintain.

2. *Massey* illustrates how such a taxpayer's estimate may go awry: consistent capital gains on the sale of rental cars for salvage indicate an unreasonably long useful life estimate.

3. The relevance of practical tests of the estimate's reasonableness, as indicated in *Massey* and *Hertz,* finds expression in the regulations: the following factors are said to bear on the length of the useful life:

(1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. . . . If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms

an adequate basis for making the determination.
Treas.Reg. § 1.167(a)–1(b), T.D. 6500, amended by T.D. 6712, 1964–1 C.B. 106. Cases not directly instructive on the issue before us illustrate that an industry-wide practice of depreciating leased goods over some initial segment of the anticipated leasable life may be determinative. *See, e. g., Electric & Neon, Inc. v. Comm'r,* 56 T.C. 1324 (1971).

4. These cases and the present one all concern the depreciation of improvements to real property. With one exception, *Western Terminal Co. v. United States,* No. 2873, 25 A.F.T.R.2d (P–H) ¶ 70–384 (E.D.Wash.1970) (no official report), the cases that have followed *Massey* and *Hertz* with regard to leased assets involved types of personal property of which the taxpayer maintained a steady flow by regular purchases and sales, leasing the successive generations on similar terms. It has not been suggested that whether the depreciable asset is real or personal property matters for the issue before us.

However that may be, it is clear that useful life should not be revised to reflect competitive failure of the venture in which the asset is used, to which it is perhaps uniquely adapted, but for whose failure in the market place its condition and design are blameless. The deduction is not intended to bail out business efforts that fail in the market place. Thus, the unprofitability of an asset is insufficient to establish obsolescence. *Detroit & Windsor Ferry Co. v. Woodworth*, 115 F.2d 795 (6th Cir. 1940); *State Line & Sullivan R. Co. v. Phillips*, 98 F.2d 651 (3d Cir.), *cert. denied*, 305 U.S. 635, 59 S.Ct. 103, 83 L.Ed. 408 (1938); *Zimmerman, supra*, 67 T.C. at 107.

As this recital of the contentions of the taxpayers and Commissioner, as well as of the applicable legal theories and cases, indicates, the proper decision in this case is not without doubt. We conclude, however, that at the time of the 1970 and 1971 returns the taxpayers could not reasonably approximate that the useful life of the improvements would be but six years and two months. Too many uncertainties existed to permit such an approximation. The mere fact that the choice of the taxpayers' useful life would closely match the depreciation deductions to the rental income flow is not enough to require overturning the Tax Court's findings. We express no opinion with respect to whether the useful life required by the Commissioner might be subject to revision at some point subsequent to the taxable years in question.

Affirmed.

PREGERSON, Circuit Judge (dissenting):

I respectfully dissent. The evidence introduced by taxpayers demonstrates that when they filed their 1970 and 1971 income tax returns, they reasonably could estimate that the useful life of the depreciable improvements would be six years and two months. The buildings were designed and constructed in accordance with the state's specifications. Their design made the buildings virtually useless for any other tenant. The zoning variance granted the project, which precluded commercial occupancy, was conditioned on continuous occupancy by governmental agencies. During negotiations for the lease, the state's leasing agent told taxpayers that there was no "probable likelihood" that the state would exercise its options to purchase the property or to renew the lease for an additional ten years, a forecast which proved to be correct. The taxpayers established that the improvements were suitable for use by a unique tenant, the state, and that taxpayers reasonably expected at the time they filed their returns that this tenant would use the facility for only six years and two months. The Tax Court's decision upholding the Commissioner's conclusion that the reasonable useful life of the improvements was thirty-two years is therefore clearly erroneous.