IRENE McLAUGHLIN HODGES AND THOMAS LYMAN HODGES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hodges v. Commissioner
Docket Nos. 20603-81, 28977-81.
United States Tax Court
T.C. Memo 1985-461; 1985 Tax Ct. Memo LEXIS 174; 50 T.C.M. (CCH) 955; T.C.M. (RIA) 85461; September 3, 1985. Thomas L. Hodges and Irene McLaughlin Hodges, pro se. Janice M. Fallman, for *175 the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' 1978 and 1979 Federal income tax in the respective amounts of $2,410 and $1,830. Following numerous concessions by both parties, [1] the sole issue for determination is the depreciable useful life for a vacation home that petitioners converted to rental use. FINDINGS OF FACT Many of the facts have been stipulated and are so found. The stipulation of facts and exhibits *176 attached thereto are incorporated herein by this reference. The pertinent facts are summarized below. Petitioners resided in Sunnyvale, California at the time they filed their petitions in these consolidated cases. Petitioners timely filed joint Federal income tax returns (Forms 1040) for calendar years 1978 and 1979. In July of 1976, petitioners purchased real property known as Mi-Wuk Village Tract Unit 4, Lot No. 938. That property is located in Tuolumne County, California, near Sonora and the Stanislaus National Forest. Well served by a nearby major state highway, the property is in a prime recreational area. The home, built around 1966, is a typical mountain A-frame, with two bedrooms and one and a half baths. Petitioners paid $31,500 for the property, plus $729 in closing costs and $289 in improvements (carpeting). No further improvements (as opposed to normal repairs and maintenance) were made to the property through the year 1979. The total cost allocable to the land was $7,402. Petitioners initially purchased the Mi-Wuk Village property as a vacation home. In May of 1978, petitioners converted the vacation home into rental property. Petitioners decided to rent *177 out the vacation home because they needed the money. At that time they had several children in college or soon to be in college. In 1978 petitioners claimed dependency exemptions for five children and in 1979 they claimed such exemptions for three children. Petitioners contend that they intended to rent out their vacation home for just five years, after which they planned to reconvert it to personal use. The useful life of petitioners' Mi-Wuk Village house as rental property is 25 years. On the Schedules E they filed with their 1978 and 1979 returns, petitioners claimed depreciation on the vacation home using the straight-line method over a claimed five-year useful life and a zero salvage value. [2] In his statutory notice, respondent redetermined petitioners' depreciation deductions using a 25-year useful life and a depreciable basis of $25,116. Petitioners now agree to the depreciable basis but challenge respondent's useful life figure. *178 OPINION Section 167[3] allows as a depreciation deduction a reasonable allowance for exhaustion or wear and tear over the useful life of the property. A "reasonable allowance" is "that amount which should be set aside for the taxable year * * * so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property." Sec. 1.167(a)-1(a), Income Tax Regs.[4]Massey Motors, Inc. v. United States,364 U.S. 92, 104-107 (1960). *179 An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. Sec. 1.167(a)-1(a), Income Tax Regs. Salvage value is "the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business." Sec. 1.167(a)-1(c)(1), Income Tax Regs.[5]
*180 An asset's useful life is the period during which it may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. Sec. 1.167(a)-1(b), Income Tax Regs.[6] Useful life for depreciation purposes is not necessarily useful inherent life, physical life, or full economic life. Massey Motors, Inc. v. United States,supra,364 U.S. at 96-97; sec. 1.167(a)-1(b), Income Tax Regs. While salvage value is not a factor for determining useful life, salvage value must be taken into account (either by reducing depreciable basis or the rate of depreciation), and an asset can never be depreciated below its salvage value. Secs. 1.167(a)-1(a), 1.167(a)-1(b), and 1.167(a)-1(c)(1), Income Tax Regs.; Massey Motors, Inc. v. United States,supra,364 U.S. at 107; Hertz Corporation v. United States,364 U.S. 122 (1960). *181 Petitioners contend that the vacation home was useful to them in their rental venture for only five years, the period of time they say they intended to rent their vacation home. Factually, there is some question as to petitioners' subjective intention. When directly asked how she determined the five-year period, Mrs. Hodges candidly replied: I have to give you an honest answer. I just chose it from out of thin air. I decided that five years over which I would have extreme expenses, and I looked around for a way to improve my income or cash flow, and I did so in May of 1978. As far as depreciation of that property, it never became an issue with me or even entered my mind since I was dealing with an immediate problem for almost a year later when I did my income tax which would have been April of the following year. While petitioners suggest that the five-year period was related to their children's education, at trial Mrs. Hodges, asked if that was the purpose or reason, replied: I used the money to increase my monthly income, my cash flow. The purposes could have been used to pay a telephone bill, heat my home, or buy textbooks or jeans." On this record, we cannot *182 find that the purpose for the rental property was a limited purpose of financing their children's education over some finite period of time. Even assuming some of the cash flow was in fact used for educational expenses, as it may well have been, the money could also be used for telephone, heating, or other family bills that would not terminate in five years or in any other finite period of time. We are not satisfied that petitioners' rental business would terminate in five years or in any other fixed period of time. Moreover, even if we were satisfied that petitioners in 1978 in fact intended to remain in the rental business for only five years, we do not think that their subjective intention is determinative of economic useful life as that concept has been defined in the regulations and the case law. In Honodel v. Commissioner,76 T.C. 351, 361-362 (1981), affd. 722 F. 2d 1462 (9th Cir. 1984), we rejected the taxpayer's argument that the depreciable useful life of their property was measured by the period during which their desired return on their investment, *183 including tax benefits (losses to be applied against other income), appeared to be obtainable. We stated (76 T.C. at 362, n. 2): The Supreme Court in Massey Motors v. United States,364 U.S. 92, 97-98 (1960), could not have contemplated such an interpretation of "economic useful life." The Supreme Court focused internally on the nature of the taxpayer's business and the use of an asset therein. Petitioners focused on themselves as investors and on those external factors which are outside the realm of a business's nature. * * * [Emphasis in original text.] In affirming our decision in Honodel v. Commissioner,supra, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, stated (722 F. 2d at 1470-1471): The taxpayers' method for determining useful life must be rejected. To do otherwise would enable individuals in any line of business to adopt a definition of useful life not based on the experience in that industry or with similar property in that line of business, but rather on calculations as to which level of depreciation deductions would be the most profitable to *184 their investment. * * * Depreciation relates to the property, not to its owner. See also Graves v. Commissioner,48 T.C. 7, 15 (1967), affd. per curiam 400 F. 2d 528 (9th Cir. 1968), rejecting an analogous argument based on subjective factors unrelated to the economic useful life of the building. Similarly, in Coussement v. Commissioner,T.C. Memo. 1966-179, affd. 391 F. 2d 227, 229 (6th Cir. 1968), the taxpayer argued that the building's useful life was 20 years because it was reasonable to assume that he, a 57-year old man, would live only 20 years from the date of acquisition and that the building would thus only be useful to him for that period of time. We rejected the "bizarre suggestion" that the depreciable useful life of that rental building should be based on the owner's life expectancy.[7]
*185 The teaching of the Honodel,Graves, and Coussement cases is that we look to economic and physical factors peculiar to a taxpayer's business activities in ascertaining the period during which the depreciable asset may be expected to be useful in that taxpayer's business. [8] Petitioners' subjective expectations concerning the purported duration of their rental activities are simply irrelevant. Petitioners seek to deduct from ordinary income their entire depreciable basis in the vacation home during the five years they say they planned to rent it and then to reconvert the home to personal use. Eventually, of course, they would have to restore these amounts to income as part of their gain on a taxable disposition of the vacation home, but only at capital *186 gains rates. [9] This is essentially the same sort of manipulative mischief that the Supreme Court refused to countenance in Massey Motors, Inc. v. United States,supra, and Hertz Corporation v. United States,supra. Moreover, even if we were to accept petitioners' claim of a five-year useful life, it is clear that the vacation home would have a very high salvage value because of its substantial remaining physical and productive life. Since a taxpayer may only depreciate the difference between his depreciable basis and the property's expected salvage value [10] over its expected useful life (see secs. 1.167(b)-0(a) and 1.167(b)-1(a), Income Tax Regs.; Massey Motors, Inc. v. United States,supra), petitioners might not even fare as well under their claimed five-year life as they have with what respondent allowed using a 25-year life. *187 Petitioners bear the burden of establishing error in respondent's determination of a 25-year useful life for their vacation home. Ames v. Commissioner,626 F. 2d 693, 696 (9th Cir. 1980), affg. a Memorandum Opinion of this Court; Potts, Davis & Co. v. Commissioner,431 F. 2d 1222, 1225 (9th Cir. 1970), affg. a Memorandum Opinion of this Court; Rule 142(a). Respondent presented the expert testimony of two Internal Revenue Service valuation engineers. One, Robert K. Featherston, had examined petitioners' vacation home in 1980 in connection with a proposed depreciation agreement between petitioners and respondent. The other, Thomas W. Cameron, examined the property in April of 1983 in preparation for the trial of these cases. Neither examined the interior of the house, but both found the vacation home to be well maintained, with no obvious damage or deterioration, from their external inspection. Both testified that the 25-year useful life determined in the statutory notice was "conservative." Although petitioners quibbled over minor details of the home's condition and the IRS engineers' investigations, they offered no evidence to contradict *188 respondent's determination of a 25-year useful life. Petitioners' brief is full of citations to inapplicable Code provisions and regulations quoted out of context. The cases they cite are of little relevance, involving either taxpayers who sustained their burden of proof or quotations of black letter principles of the law of depreciation. Petitioners simply failed to carry their burden of proof. Petitioners' fundamental premise seems to be that since other taxpayers--by proof in their cases or by legislative grace--have obtained rapid tax write-offs of various investments, they should likewise be entitled to depreciate the full basis of their vacation home over five years. Other taxpayers' proof is of no aid to petitioners. Moreover, the policy choices embodied in specialized depreciation provisions that are wholly inapplicable to these petitioners are the province of the Congress, not this Court. Petitioners have failed to prove any error in respondent's determination of a 25-year useful life for their rental home. To reflect this holding and the parties' concessions, Decisions will be entered under Rule 155.
Footnotes
1. The stipulation of facts sets out the various concessions. The parties treat as settled all but the useful life issue. Petitioners have not formally conceded their claim in their petitions that interest on any deficiencies we determine would be cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Nonetheless, they did not address this claim at trial or on brief, so we conclude that they have abandoned this frivolous position. In any event, this Court has no jurisdiction over interest on any deficiencies we determine. Steubenville Bridge Co. v. Commissioner,11 T.C. 789, 802↩ (1948) and cases cited therein.
2. On their 1978 return, petitioners claimed a depreciable basis of $29,610; on their 1979 return, they claimed a depreciable basis of $25,116. The $25,116 figure represents the purchase price of $31,500 less the $7,402 allocable to land, plus the $729 closing costs and the $289 improvements. Respondent used the $25,116 depreciable basis in his statutory notice of deficiency.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all references to "Rules" are to the Tax Court Rules of Practice and Procedure. ↩
4. Section 1.167(a)-1(a), Income Tax Regs., provides in pertinent part: Depreciation in general.--(a) Reasonable allowance.Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(g)↩ and § 1.167(g)-1. An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. * * *
5. Section 1.167(a)-1(c)(1), Income Tax Regs., provides in pertinent part: (c) Salvage.↩ (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. However, if there is a redetermination of useful life under the rules of paragraph (b) of this section, salvage value may be redetermined based upon facts known at the time of such redetermination of useful life. Salvage, when reduced by the cost of removal, is referred to as net salvage. The time at which an asset is retired from service may vary according to the policy of the taxpayer. If the taxpayer's policy is to dispose of assets which are still in good operating condition, the salvage value may represent a relatively large proportion of the original basis of the asset. However, if the taxpayer customarily uses an asset until its inherent useful life has been substantially exhausted, salvage value may represent no more than junk value. Salvage value must be taken into account in determining the depreciation deduction either by a reduction of the amount subject to depreciation or by a reduction in the rate of depreciation, but in no event shall an asset (or an account) be depreciated below a reasonable salvage value. * * *
6. Section 1.167(a)-1(b), Income Tax Regs., provides in pertinent part: (b) Useful life. For the purpose of section 167↩ the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements.Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * *
7. In Hampton Pontiac, Inc. v. United States,294 F. Supp. 1073, 1079 (D. S.C. 1969), the District Court determined that the depreciable useful life of the intangible property there at issue (automobile franchises) was fairly measured by the life expectancy of the taxpayer's sole shareholder. That was because those intangible franchise rights would terminate upon the shareholder's death. Hampton Pontiac is clearly distinguishable from the instant case and in no way undermines our holding in Coussement v. Commissioner,T.C. Memo. 1966-179, affd. 391 F. 2d 227↩ (6th Cir. 1968).
8. See also Adda, Inc. v. Commissioner,9 T.C. 199, 210-211 (1947), affd. on another issue 171 F. 2d 367↩ (2d Cir. 1948). There, a two-story business building, located on a valuable site, had a physical life of 40 years but a useful economic life of only 21 years in the taxpayer's business.
9. There would be no section 1250 recapture because petitioners chose the straight-line method of depreciation. ↩
10. Contrary to petitioners' implicit argument, the salvage value limitation applies to improvements on real property (buildings), not just to personal property. See Dezendorf v. Commissioner,312 F. 2d 95 (5th Cir. 1963), affg. a Memorandum Opinion of this Court; Casey v. Commissioner,38 T.C. 357, 384↩ (1962).